IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VERONICA ROBINSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | NO. 06-1838 |
| Commissioner of | : | |
| Social Security Administration | : | |

## REPORT AND RECOMMENDATION

THOMAS J. RUETER                               December      , 2006
United States Magistrate Judge

       Plaintiff, Veronica Robinson, filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act").

       Plaintiff filed a Brief and Statement of Issues in Support of Request for Review (hereinafter "Pl.'s Req. for Rev."). Defendant filed a Response to Request for Review of Plaintiff (hereinafter "Def.'s Resp.").  For the reasons set forth below, this court recommends that plaintiff's request for review be GRANTED and the case be REMANDED to the Commissioner for further administrative proceedings.[1]

## I.      FACTUAL AND PROCEDURAL HISTORY

       Plaintiff initially filed a claim for SSI on May 11, 1999 claiming disability under

---

    [1]      In her request for review, plaintiff requests that this case be remanded either for the calculation of benefits or for additional administrative proceedings.  (Pl.'s Req. for Rev. at 15.) This court recommends that plaintiff's request for review be granted only insofar as it requests "additional administrative proceedings and a decision which complies with prevailing law."  Id.

the Act since May 1, 1999.  (R. 56, 79.)  The state agency denied her claim and her request for

reconsideration was denied.  (R. 27-31.)  A hearing was scheduled for September 29, 2000, and

plaintiff returned an acknowledgment card dated August 29, 2000 which indicated that she

received notice of the hearing.  (R. 55.)  Plaintiff failed to appear for the hearing and the

Administrative Law Judge ("ALJ") dismissed her claim on September 29, 2000.  (R. 156-58.)

On July 16, 2003, plaintiff filed her second SSI application and alleged an onset

disability date of May 1, 1999 due to pain in her back, legs, feet and hands, as well as headaches

and vision problems.  (R. 205-09, 259, 263.)  Plaintiff's claim was denied initially and she

requested a hearing before an ALJ.  (R. 169-70.)  Plaintiff failed to attend the July 8, 2004

hearing.  On July 26, 2004, a Notice of Dismissal was issued by the ALJ based on plaintiff's

failure to respond to the notice of the hearing and her failure to attend the proceedings.  (R. 161-

64.)  On October 4, 2004, plaintiff filed a Request for Review of the Dismissal wherein she

indicated that she never received notice of the hearing.  The Appeals Council remanded the case

to the ALJ for a hearing after determining that there was no acknowledgment card in the file.  (R.

183-87.)

On August 17, 2005, ALJ Paula Garrety held a hearing at which plaintiff,

represented by counsel, and a vocational expert ("VE") testified.  (R. 349-79.)  ALJ Garrety

denied plaintiff's SSI claim in an opinion dated August 29, 2005.  (R. 16-24.)  The ALJ made the

following findings:

1.      The claimant has not engaged in substantial gainful activity since July 16,
        2003, as alleged.

2.      The medical evidence establishes that since July 16, 2003, claimant has
        had the following severe impairments: arthritis of the lumbar spine,

residuals of a fractured right ankle, and a depression disorder.  Claimant's impairments of diabetes mellitus and hypertension are regarded as non-severe.

3.      At all times since July 16, 2003, claimant's impairments have not met or medically equaled any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4.      The claimant's hearing testimony regarding the nature and severity of her impairments and resultant limitations is not fully credited as it greatly exceeds what the objective and clinical findings of record could reasonably be expected to produce and is inconsistent with her demonstrated activities.

5.      Since July 16, 2003, the claimant has been limited to performing a range of light work as she is capable of lifting up to 20 pounds but cannot engage in prolonged standing/walking but is able to sit for prolonged periods of time.  Claimant is further subject[ed] to simple and routine one to two step tasks involving limited contact with the public.

6.      The claimant has no past relevant work.

7.      As claimant is precluded from performing a full range of light work, section 416.969 and Rule 202.10, Appendix 2, Subpart P, Regulations No. 4, which directs a finding of "not disabled," is used only as a framework for decision making.

8.      Although claimant's residual functional capacity for a full range of light work is reduced by non-exertional limitations, there still remain a significant number of jobs in the national economy that the claimant could perform.  Examples of such jobs are enumerated in the body of this decision.

9.      At all times since July 16, 2003, and continuing through the date of this decision, the claimant is not under a "disability" as defined in the Social Security Act.

(R. 23-24.)

Plaintiff filed a request for review of the ALJ's decision which was denied by the

Appeals Council on March 9, 2006.  (R. 8-11.)  Plaintiff now seeks judicial review of the

3

decision of the ALJ pursuant to 42 U.S.C. § 405(g) and 1383(c).

## II.   STANDARD OF REVIEW

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision. Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is more than a mere scintilla of evidence, but may be less than a preponderance of the evidence. Jesurum, 48 F.3d at 117. This court may not weigh evidence or substitute its conclusions for those of the fact-finder. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). As the Third Circuit stated, "so long as an agency's fact-finding is supported by substantial evidence, reviewing courts lack power to reverse . . . those findings." Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).

To be eligible for SSI, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Specifically, the impairments must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Under the Act, the claimant has the burden of proving the existence of a disability and must furnish medical evidence indicating the severity of the impairment. 42 U.S.C. § 423(d)(5). A claimant satisfies this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). Once this standard is met, the burden of proof shifts to the Commissioner to show that given the claimant's age, education, and work experience the claimant has the ability to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

The Commissioner decided this matter by utilizing the five step sequential evaluation process established by the Department of Health and Human Services to determine whether a person is "disabled." This process requires the Commissioner to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment which meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, whether the claimant is able to perform other work, in view of his age, education, and work experience. 20 C.F.R. § 416.920. The Commissioner also must apply specific guidelines when assessing mental impairments. 42 U.S.C. § 421(h); 20 C.F.R. § 416.920a.

III.   **BACKGROUND**

A.   **Testimony of Plaintiff, August 17, 2005**

Plaintiff, represented by counsel, testified at the administrative hearing. She resided in a house with two adult cousins. (R. 356.) Plaintiff completed tenth grade and last worked in 1987 or 1988. Id. She received welfare benefits, including food stamps and medical

coverage.[2]  Id.  Plaintiff was able to wash dishes, cook using a microwave and make her bed.[3]

(R. 357.)  She used to sew but explained that she "can't see no more because my eyes are pretty

bad."[4]  Id.  Plaintiff acknowledge that glasses improved her vision.  Id.

> When asked why she was unable to work, plaintiff replied:
>
> Well, I have hand trouble, spine trouble, leg trouble, standing up trouble.  I just
> fell and broke my leg last year, broke my foot last year.  I fell down the steps and
> did this one, I think, last year.  It's just a problem falling, you know.  And my
> hand, the pain in my legs, my back.

(R. 357-58.)  Plaintiff had not received treatment for her ankle since March 2005.  (R. 370.)

> Plaintiff testified that she had psychological problems which included auditory

hallucinations.[5]  (R. 358.)  She began treatment for depression in 2005.[6]  Id.  Plaintiff was

unhappy living with her family members.  Plaintiff moved from her home five years prior to the

---

[2]  One cousin with whom plaintiff lived received social security benefits.  (R. 356.)

[3]  Plaintiff explained that her younger male cousin "can cook a little bit, but we use
the microwave because he's not stable on his feet.  He has crutches.  And he sweeps and stuff,
just about anything."  (R. 363.)  When asked if the condition which necessitated the use of the
crutches was temporary or permanent, plaintiff replied:  "Permanent."  Id.

[4]  Plaintiff testified that she no longer reads because of her vision problems.  (R.
375.)

[5]  Plaintiff testified:  "I hear phones ringing and the phone's not ringing.  I hear
somebody saying something and there's nobody there."  (R. 358.)

[6]  Plaintiff was treated at Friend's Hospital for depression.  She was treated by a
therapist and a psychiatrist.  (R. 373.)  Plaintiff reportedly had contemplated suicide "quite a few
times."  (R. 374.)  She has never been hospitalized for psychological reasons.  Id.  She has never
had discussions with a health professional regarding admission to a sheltered program.  Id.  She
experienced mood swings on a daily basis; she did not know what caused these mood swings.
(R. 374-75.)

hearing, after the death of her husband.[7]  (R. 359.)  She planned to get a home of her own.[8]  Id.
Plaintiff did not leave her home often because she did not like to be bothered by others.  She
attended doctors' appointments and church services.  She was driven to these activities by her
cousin.  Plaintiff took public transportation to the hearing, although she maintained that she
rarely took public transportation because she had a "bad sense of direction."  (R. 364-65.)  She
felt "uneasy" testifying in the hearing room.  (R. 361-62.)

　　　　Plaintiff indicated that she could stand for approximately fifteen minutes.[9]  (R.
363.)  She estimated that she could not walk one city block without experiencing difficulty.  (R.
368.)  She could sit approximately twenty minutes without experiencing pain.  Id.  Plaintiff
related that she could not lift with her right hand, and added that she was unable to lift a gallon of
milk with her left hand.[10]  Id.  Upon questioning by her attorney, plaintiff explained that she had
completed a form incorrectly which requested information regarding her daily activities.  (R.
366.)  Plaintiff explained that on the form she indicated that she cared for a friend and her son;
however, in reality, they cared for her.  Id.  Plaintiff testified that a friend and her son assisted her
with bathing and dressing.  (R. 366-67.)

　　　　Plaintiff smoked approximately three cigarettes per day; previously she smoked

---

[7]　　　Plaintiff related that her husband never worked and received social security
benefits.  (R. 359.)

[8]　　　Plaintiff explained that the people she lived with "get on my nerves."  (R. 361.)

[9]　　　In response to later questioning by her attorney, plaintiff testified that after five
minutes of standing in one spot, she had to "sit down or lean on the wall."  (R. 372-73.)

[10]　　　When asked by her attorney if she was treated for hand and finger pain, plaintiff
responded: "And some for pain - - what, inflammation.  Inflammation of the joint
(INAUDIBLE), and I guess that's [sic] what cuts into the thumb."  (R. 372.)

about one pack per day.  (R. 359-60.)  Plaintiff testified that she stopped drinking alcoholic

beverages five years prior to the administrative hearing.  (R. 360.)  However, when asked by the

ALJ if plaintiff's gastroenterologist was mistaken when he remarked that plaintiff drank several

glasses of wine and several beers per day as recently as December 2003, plaintiff replied: "I used

to like use, then I came down to just drinking beer, and then I just gave the beer up."  (R. 361.)

Plaintiff was treated for high blood pressure, diabetes and depression.  (R. 360-61.)  When asked

what medications she took, plaintiff responded: "Pendell, Zoloft.  I really can't take many drugs."

(R. 369.)  She had taken Percocet in the past to treat ankle pain, but she was "taken off" that

medication.[11]  (R. 369-70.)  Plaintiff testified that medication controlled her diabetes and

hypertension; she experienced no side effects from the medicine.  (R. 370-71.)  Plaintiff did not

nap during the day, nor did she ever become so relaxed from medication that she fell asleep.  (R.

372.)

**B.      Testimony of VE Richard Baine, August 17, 2005**

The ALJ posed the following hypothetical to the VE:

> I'll begin by asking you to assume we're talking about somebody of this
> claimant's age, education and past work history.  Further assume the individual is
> capable of lifting to 20 pounds in jobs that do not require prolonged standing or
> working [sic].  The work should be confined to simple[,] repetitive[,] routine one-
> to-two step tasks, that is self-paced, and - - I'm sorry, just simple repetitive one-
> to-two step tasks, not self-paced.  And providing no more than limited contact
> with the public.  Are there jobs that can be performed within the boundaries of
> these limitations?

(R. 376.)  The VE opined that an individual with the aforementioned limitations would be

capable of performing work as a packer, assembler, inspector and sorter.  Id.  These jobs exist in

---

[11]      Plaintiff's pain was alleviated by the Percocet and she experienced no side effects
from the medication.  (R. 372.)

substantial numbers in both the regional and national economies.  (R. 376-77.)  Upon questioning

by plaintiff's counsel, the VE testified that if he credited all of plaintiff's complaints at the

hearing, plaintiff would be unemployable.  (R. 377-78.)

## IV.   DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's finding that

plaintiff's testimony was not fully credible "regarding her limitations and pain."  (Pl.'s Req. for

Rev. at 3-8.)  Plaintiff also contends that the ALJ "failed to mention all of the evidence provided

by Ms. Robinson's treating psychiatrist, Sudha Jalraj, M.D., or to credit Dr. Jalraj's opinion that

Ms. Robinson was disabled."  Id. at 8-12.  In addition, plaintiff contends that the ALJ improperly

evaluated plaintiff's residual functional capacity ("RFC") and her non-exertional impairments.

Id. at 12-15.  Defendant maintains that substantial evidence supports the decision of the ALJ.

(Def.'s Resp. at 7-11.)

### A.   Plaintiff's Subjective Complaints

Plaintiff complains that the ALJ failed to consider plaintiff's complaints of pain

and the limitations resulting therefrom.  (Pl.'s Req. for Rev. at 3-8.)  A claimant's testimony

regarding subjective complaints is entitled to great weight when supported by competent medical

evidence.  Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979).  See also Burns v.

Barnhart, 312 F.3d 113, 129 (3d Cir. 2002) (subjective complaints must be given "serious

consideration.")  The Third Circuit has stated that "[a]llegations of pain and other subjective

symptoms must be supported by objective medical evidence."  Hartranft v. Apfel, 181 F.3d 358,

362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529).  Once an ALJ determines that a medical

impairment exists that reasonably could cause the subjective symptoms, the ALJ "must evaluate

the intensity and persistence of the pain or symptoms, and the extent to which it affects the individual's ability to work." Id.  This determination, the court continued, "requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id. (citing 20 C.F.R. § 404.1529(c)).

It is within the province of the ALJ to evaluate the credibility of the claimant. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).  An ALJ may disregard subjective complaints when contrary evidence exists in the record.  Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993).  The ALJ must, however, provide his reasons for doing so.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000); Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990) (noting that ALJ may reject claim of disabling pain where he has considered subjective pain and specified his reasons for rejecting these claims).

In the instant case, the ALJ explained why she discounted plaintiff's subjective complaints.  The ALJ found that the complaints of pain and physical limitations exceeded that which could be expected from the objective medical evidence.  (R. 20-22.)  With respect to plaintiff's physical impairments, the ALJ related that no treating or examining physician provided an assessment of plaintiff's exertional limitations.  (R. 22.)  The ALJ reported that plaintiff underwent a open reduction with internal fixation on her right ankle.  X-rays showed successful application of a posterior plate and the reduction was excellent in both the lateral and medial sides of the joint.  X-rays performed on March 14, 2005 revealed consolidation of plaintiff's fibular fracture with the posterior place in good alignment.  (R. 20.)  The ALJ related that plaintiff did not return for treatment for at least five months.  Id.

Regarding plaintiff's back, the ALJ reported that x-rays of her spine revealed

discogenic disease at L5-S1 and L4-L5, as well as arthritic changes at L5-S1.[12]  (R. 20.)

However, as the ALJ pointed out, plaintiff acknowledged that she did not receive treatment for

her back, nor did she take medication for back pain.  (R. 22, 371.)  With respect to her

complaints of hand pain, the ALJ explained that plaintiff did not receive any treatment for this

impairment which would be indicative of a disabling impairment. (R. 20, 22.)

       The ALJ further indicated that plaintiff's daily activities belie her claim that her

pain was disabling.  The ALJ pointed out that plaintiff was able to take public transportation,

wash dishes, make her bed and prepare simple meals.  (R. 22, 357, 364.)  In addition, plaintiff

reported to Dr. Jalraj that she was taking care of her cousin's home while her cousin worked.  (R.

325.)  Finally, at the hearing, the ALJ asked plaintiff whether she drank alcoholic beverages.

After initially responding in the negative, plaintiff changed her testimony after additional

questioning by the ALJ, (R. 360-61), thus calling into question plaintiff's credibility.  An ALJ's

"findings on the credibility of claimants 'are to be accorded great weight and deference,

particularly since an ALJ is charged with the duty of observing a witness's demeanor and

credibility.'" Irelan v. Barnhart, 243 F. Supp. 2d 268, 284 (E.D. Pa. 2003) (citing Walters v.

Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997)).  Moreover, an ALJ may disregard

subjective complaints when contrary evidence exists in the record.  Mason v. Shalala, 994 F.2d

1058, 1067-68 (3d Cir. 1993).  As stated above, the ALJ set forth sufficient reasons for finding

plaintiff's complaints of pain less than credible.  Therefore, this court finds that this argument is

---

[12]     Plaintiff applied for SSI on July 16, 2003.  A July 22, 2003 progress note reported
that plaintiff complained of some back pain.  However, the report further indicated that plaintiff
had not been seen by the doctor in two years.  (R. 275.)  In a medical history report dated October
14, 2004, plaintiff indicated that she was not taking any medication.  (R. 337.)

without merit.

**B.    Opinion of Plaintiff's Treating Psychiatrist**

Plaintiff asserts that the ALJ erred when she did not assign the appropriate weight to Dr. Jalraj's assessment of plaintiff's mental impairments.  (Pl.'s Req. for Rev. at 8-12.)  In addition, plaintiff contends that the ALJ erred by ignoring Dr. Jalraj's GAF assessments.  Id. Defendant responds that the evidence of record supports the ALJ's conclusion that the assessment of Dr. Jalraj was entitled to little weight.  (Def.'s Resp. at 7-9.)

A treating physician's opinion is entitled to controlling weight if it is consistent with the other substantial evidence in the record and is supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 416.927(d)(2).  However, if substantial evidence in the record supports a conclusion contrary to that of the treating physician, the ALJ may reject the treating physician's findings.  Frankenfeld v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988).  "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citing Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985)).  When rejecting a treating physician's opinion, "an ALJ may not make speculative inferences from medical reports," and may reject the opinion "outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotes and citations omitted).  See also Plummer, 186 F.3d at 429 (same).

In addition, while the Third Circuit has acknowledged that "greater weight should

be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant . . . [,] a statement by a plaintiff's treating physician that she is 'disabled' or 'unable to work' is not dispositive." <u>Adorno v. Shalala</u>, 40 F.3d 43, 47-48 (3d Cir. 1994). Rather, "the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." <u>Id.</u> at 48. <u>See Morales</u>, 225 F.3d at 317 (explaining that the ALJ can choose whom to credit but cannot reject evidence for no reason or for the wrong reason). The Third Circuit has stated, "where there is conflicting probative evidence in the record, [there is] a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and [the court] will vacate or remand a case where such an explanation is not provided." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001).

With respect to plaintiff's mental impairments, the ALJ noted that plaintiff's "mental health treatment commenced on November 8, 2004. Prior thereto, there is no evidence or assertion of any psychiatric treatment or hospitalization." (R. 20.) The ALJ further noted that between January 5, 2005 and May 26, 2005, plaintiff attended approximately nine therapy sessions and/or medication checks. <u>Id.</u> The ALJ relayed that progress notes showed that plaintiff reported improved sleep, mood, energy level and appetite. Progress notes further revealed that plaintiff attended church services, took care of her cousin's home while her cousin worked, visited friends, and considered teaching Sunday school. On May 26, 2005, plaintiff reported feeling better and had a stable mood. (R. 20-21, 324-26.) In analyzing plaintiff's RFC, the ALJ did not wholly reject the opinion of Dr. Jalraj, but relied in part on his clinical notes. The ALJ explained that the clinical notes were inconsistent with Dr. Jalraj's ultimate conclusion that plaintiff was disabled. (R. 22.)

Notwithstanding the foregoing, plaintiff correctly notes that in her opinion the ALJ failed to mention the GAF scores Dr. Jalraj assigned to plaintiff.[13] (Pl.'s Req. for Rev. at 9-12.) On December 8, 2004, Dr. Jalraj assigned plaintiff a GAF score of forty-five. (R. 318.) On May 2, 2005, Dr. Jalraj assigned plaintiff a GAF score of forty-nine. (R. 321.) A GAF score between forty-one and fifty is indicative of "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), American Psychiatric Assoc., at 30-32 (4th ed. 1994).[14]

"Because a GAF score constitutes medical evidence accepted and relied upon by a medical source, it should be addressed by an ALJ in making a determination regarding a claimant's disability." Santiago-Rivera v. Barnhart, 2006 WL 2794189, at *10 (E.D. Pa. Sept. 26, 2006). The GAF scores assigned by Dr. Jalraj, plaintiff's treating psychiatrist, support the

---

[13]     Plaintiff also complains that the ALJ incorrectly reported that the record did not contain any reference to plaintiff's complaints of auditory hallucinations. (Pl.'s Req. for Rev. at 10 n. 9). The record reveals that plaintiff reported auditory hallucinations on December 8, 2004. (R. 313.) Upon remand, the ALJ should determine what impact, if any, plaintiff's reported auditory hallucinations have on her ability to perform work.

[14]     The Global Assessment of Functioning Scale is a tool used to report a clinician's judgment of an individual's overall level of functioning and can be used to track the clinical progress of an individual in global terms, using a single measure. DSM-IV, at 30 (4th ed. 1994). In assigning a GAF score, a clinician is to consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness", but is not to include impairments in functioning due to physical or environmental limitations. Id. at 32. An individual may be assessed a GAF score from 0 to 100. Id. The GAF scale provides that a score of "0" indicates inadequate information. DSM-IV, at 32. A score in the range of "1 to 10" indicates "[p]ersistent danger of severely hurting self or others", or "persistent inability to maintain minimal personal hygiene, or serious suicidal acts with clear expectations of death," while a score in the range of "91 to 100" indicates "[s]uperior functioning in a wide range of activities" with "no symptoms." Id.

conclusions of the physician, and "absent from the ALJ's discussion is any meaningful indication of how [she] considered these GAF scores or discounted their significance." Span ex rel. R.C. v. Barnhart, 2004 WL 1535768, at *7 (E.D. Pa. May 21, 2004). While it is true that an ALJ "may properly accept some parts of the medical evidence and reject other parts . . . he must consider all of the evidence and give some reason for discounting the evidence he rejects." Adorno, 40 F.3d at 48.[15] Because of the ALJ's failure to consider this evidence, this court is unable to conclude that the determination of the ALJ regarding plaintiff's mental impairments is supported by substantial evidence. Although the ALJ in this case set forth some evidence upon which she relied to support her conclusions, she did not disclose her reasons for not considering the GAF scores. See Escardille v. Barnhart, 2003 WL 21499999 (E.D. Pa. Jun. 24, 2003) (finding ALJ's failure to mention GAF score and its relationship to claimant's ability to work warranted remand). Upon remand, this court recommends that the ALJ consider plaintiff's GAF scores and their effect, if any, upon plaintiff's ability to perform work.[16]

**C.   ALJ's  RFC Determination**

"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc.

---

[15]     Pursuant to Social Security rules, a claimant's GAF score is not considered to have a direct correlation to the severity requirements of the listings. 66 Fed. Reg. 50746, 50746-65 (2000). However, the rules still note that the GAF is the scale used by mental health professionals to "assess current treatment needs and provide a prognosis." Id. Therefore, the GAF scores constitute medical evidence properly relied upon by a medical source which must be addressed by an ALJ in making a disability determination.

[16]     This court does not conclude that the GAF scores in question indicate that plaintiff was disabled under the Act. The court merely concludes that the omission of any discussion of the scores by the ALJ was an error which warrants remand of this case for consideration of this evidence.

Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (citing 20 C.F.R. § 404.1545(a)) (quotation omitted). In the instant matter, the ALJ concluded that plaintiff retains the RFC to perform light work with limitations. As set forth above, the ALJ failed to evaluate plaintiff's GAF scores and thus, failed to properly weigh the evidence before her. Therefore, the ALJ's conclusion that plaintiff can engage in light work with limitations is not based upon substantial evidence. Therefore, this court recommends that upon remand, the ALJ determine how plaintiff's GAF scores impact her RFC.

## IV.    CONCLUSION

After a careful and thorough review of all of the evidence in the record, this court concludes that there is not substantial evidence to support the ALJ's decision denying plaintiff SSI benefits. Thus, this court recommends that plaintiff's request for review be granted so that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) to further develop the record in accordance with this Report and Recommendation.[17]

---

[17] Since the court recommends a remand pursuant to sentence four of 42 U.S.C. § 405(g), the court recommends that plaintiff's request for review be granted and judgment be entered in plaintiff's favor. See Shalala v. Schaefer, 509 U.S. 292, 296-97 (1993) (Sentence four of 42 U.S.C. § 405(g) authorizes a district court to enter a judgment "with or without" a remand order, not a remand order "with or without" a judgment.). See also Kadelski v. Sullivan, 30 F.3d 399, 401 (3d Cir. 1994).

## R E C O M M E N D A T I O N

AND NOW, this        day of December, 2006, upon consideration of plaintiff's request for review and defendant's response thereto, it is respectfully recommended that plaintiff's request for review be GRANTED and this case be remanded for proceedings consistent with this Report and Recommendation.

BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge

17